## HENRY A. GREEN v. WM. W. EMBRY.

ATTACHMENT; *Alleged Fraud; Motion to Dissolve.* Where an attachment is obtained upon the affidavit of a plaintiff, that the defendant fraudulently contracted the debt for which the action is brought, and the defendant fully denies the charge under oath, and the plaintiff states in a deposition taken at the instance of the defendant, that the fraud referred to in his affidavit was the attempt of the defendant to defraud him by neglecting to take such measures for the preservation of his business as is usually taken by ordinary business men, and that the suit was a friendly one, and thereafter the plaintiff files an additional affidavit stating that the money sued for was obtained by the fraud of the defendant in inducing the plaintiff to deposit the same in a bank, from whence it was at once drawn by the defendant, under a promise of a partnership to be formed by plaintiff and defendant, the district court does not err in sustaining a motion to dissolve the attachment and release the attached property.

*Error from Leavenworth District Court.*

AN attachment against property was sued out by *Green*, and the district court, at the March Term 1876, on motion of *Embry* dissolved and set aside the attachment. *Green* brings the case here.

*Taylor & Gillpatrick*, for plaintiff, that the testimony upon the whole case sustained the attachment, cited 2 U. S. Dig. p. 225, § 2476; 4 Abb. 349; 24 La. An. 128.

*Byron Sherry*, for defendant, contended that plaintiff's own testimony disproved the allegation of fraud.

The opinion of the court was delivered by

HORTON, C. J.: The plaintiff seeks in this proceeding to reverse the order of the court below discharging an attachment sued out at his instance against the property of the defendant. The only ground of attachment relied on is, "that the defendant fraudulently contracted the debt for which the action was brought." The affidavit for the attachment was sworn to January 15th 1876, by the plaintiff, H. A. Green. The case comes here upon evidence in the way of affidavits and depositions, as no oral testimony was offered or admitted on the hearing of the motion to discharge the attached property. Under these circumstances, if the order of the district court clearly appeared to be against the weight and preponderance of the evidence, this court would reverse the order for that reason alone; but an examination of the affidavits and depositions convinces us there can be no reasonable doubts as to the correctness of the ruling of the court below. The only evidence necessary to be commented upon is contained in the affidavits and depositions of the plaintiff in error, and the affidavit of the defendant. In the original affidavit for the attachment, Green swore, in the words of the statute, that the defendant fraudulently contracted the debt. Afterward, his deposition was taken at the instance of the

defendant, and on the hearing such deposition was read in support of the motion to discharge the property. Among other things Green testified in his deposition:

"I believe I may have said to Mr. Embry, in Couch's liquor-store, in February 1876, in the presence of Thomas Duniffe, that this (meaning the case at bar) was only a friendly suit. I then stated what I thought to be true.

"*Question.*—If this was a friendly suit, why did you charge him with fraud in your affidavit? *Answer.*—Because it was represented to me, that if the money was not accounted for, it was naturally fraud. I did not see at that time, why the fraud should be pursued.

"*Q.*—What do you mean by the language, 'the fraud pursued?' *Ans.*—Following it up.

"*Q.*—What fraud do you refer to? *Ans.*—The whole case at will.

"*Q.*—Fraud by whom? *Ans.*—The defendant in this case.

"*Q.*—Do you now claim that Embry at any time attempted to defraud you? *Ans.*—Yes, not willfully though, but by neglect. I mean by neglecting to take such measures for the preservation of his business, as are usually taken by ordinary business men.

"*Q.*—This then is what you mean by the fraud you refer to in your affidavit? *Ans.*—I never accused Mr. Embry of fraud in any other way. I do not think he would do it. I do not know now who informed me Mr. Embry was going to make a chattel mortgage to one Byron Sherry.

"*Q.*—Have not others besides your attorneys advised you to commence proceedings against Mr. Embry? *Ans.*—They had not advised me when I began it, because as I said before, when I began it, it was a friendly suit. A good many have since indirectly advised me to press the suit."

The affidavit of the defendant denied the charge of having fraudulently contracted any debt to plaintiff; denied that he was indebted to the plaintiff in any sum; admitted having had business transactions with him, and that arrangements had been partially effected for a partnership between them, but that it was brought to an end by plaintiff failing to comply with his part of the contract. The plaintiff filed a subsequent affidavit, of the date of February 12th 1876, which made no explanation of the statements in his deposition taken

by defendant, but did state that he was led to place $1,290 to the credit of Embry & Green, under a promise of a partnership; that Embry received the money sued for, viz., $550, from the deposit, on a check drawn by Embry, but signed by him, "Embry & Green."

In our view, the statements of Green are so conflicting and contradictory as to be undeserving of any consideration. His testimony was undoubtedly treated by the district court as wholly unreliable, and we must entirely disregard it. A person who so recklessly, if not criminally, trifles with the solemnity of an oath as to vary his evidence upon every different occasion when it is taken, ought not to merit the attention of the court with a claim that he is worthy of belief. When the golden thread of truth is once dropped, it is impossible to tell where it can be taken up again.

An attempt was made in the court below to prove by affidavits that the plaintiff was too much intoxicated to give coherent statements of fact, when his deposition was taken, and that he was also then laboring under fear of personal violence. The affidavits on this point are very indefinite, and do not seem to have been made from the personal knowledge of the parties. But the attempted exculpation of the plaintiff in this way, does not commend his conduct greatly to us, nor add any weight to his credibility at our hands. We are charitable enough to hope that there was some mistake in the evidence as written; but as presented to us, we can give it no value, and the plaintiff no credence.

The order of the court dissolving the attachment and releasing the attached property, will be affirmed.

All the Justices concurring.